Good morning. May it please the court, Mr. Hill. Respect of its constitutional religious freedom, not perfection, is what Napoleon wants. I'm Chris Kragness, and I'm pleased to represent Mr. Mbonyunkiza in this matter. Your Honors, before I get to a rendition of the facts, I think there are some important words that may come up today and that were brought up throughout the briefing that might require some definitions, such as ignorance, lack of knowledge, education, or awareness, something I've learned ever since law school and cited many times in many courts around the country is never a defense. Insulting, the word that the district court used as it related to Napoleon's practice of his religious freedoms. It was insulting to his religious freedoms, the conduct that occurred. Insulting is to treat with insolence, indignity, or contempt, and also to affect others. That's all well and good, and I understand your position. It's not really what we're here to deal with. Certainly, Your Honor. One thing, is isolated versus widespread a question of fact or law? Isolated versus widespread, Your Honor, certainly is a question of fact. Well, in some context. Well, it certainly is in this particular context. So is negligence, so is a lot of critical constitutional terms. Absolutely, Your Honor. If the Supreme Court got this case, would it consider the difference in those terms for applying the standards? Would it consider the ultimate question fact or law? I believe it would consider the ultimate question in this particular matter a question of fact. So in your view, whether it was isolated versus widespread is for an Iowa jury to decide? Yes, Your Honor. What case would support that? Well, Your Honor, in terms of what cases support it, I think- Just if you say, if the answer's none, fine. If it's to or against me, but they're wrong, fine. No, Your Honor. I don't believe it's that cut and dry. There are many cases that have decided an isolated incident, and they were cited by the district court. For instance, in the Johnson Bay versus Indiana- But did any of them address whether it's the ultimate question is fact or law? Specifically- I don't know of one that did. I don't believe that they did, Your Honor. All right. What I was attempting to get at was the fact that in those cases, they constantly referred to as isolated in what I truly believe it means, one or singular incident. Those particular cases the district court cited talked about one meal being done or a one-time incident occurring, not something that we have in this particular case. Well, here we have four incidents, I think. Would you agree with that, that there's four that are at issue here? We have four situations that were grieved. Yes, Your Honor. Okay. And so my understanding of the record is in one of the cases, your client certainly did not eat the pork. That's clear on that. Or was served pork. Two of the cases, he may have been served pork, and we don't know. May have been. And we don't know whether he ate it. And in the last case, he was almost certainly served pork, or at least it looks that way. That seems pretty isolated to me, especially in light of the fact that in each of those cases, the prison tried to remedy the situation right afterwards. Respectfully, Your Honor, and I understand what you're trying to say, Judge. However, I think we go back to the factual versus legal question in that situation. We have a factual determination. In one of the cases that you're talking about, the ham and beans, the complaint was there was no sign, there was no distinction that there may have been contamination. And while he might not have eaten it, I don't believe the record indicated whether he was actually served anything else in substitute of that. Is he, and should he be punished for exercising his rights? And do the appellees have the responsibility to ensure his adherence to his or her faith? Well, and the flip question is, should these folks that have been sued be held responsible, potentially financially responsible, for making a simple mistake? At least in the one instance in which he was certainly served pork. Absolutely. They absolutely should, Your Honor. This is part of their responsibilities, their duties, and the conduct in which they administer their job, responsibilities. We are talking about the exercising of a constitutional right, that ability to exercise your adherence to your faith. But isn't the standard different in prison than it would be in other contexts? I mean, I'm not positive about this, and you can tell me if I'm wrong, but that's why we require a substantial burden for prison-type claims. Isn't that right? Absolutely, Your Honor. So it seems to me that if this is not a substantial burden, it's hard to understand what would, or is not a substantial burden, it would be hard to understand what would be, would not be, whatever. I mean, I've got it all backwards, but the point is, is this is pretty isolated. And so I can't think of a case where there wouldn't be liability if an inmate were served pork, I guess is my point. That's a better way of answering it. Well, it sounds, your answer may sound to me like your position is qualified immunity doesn't apply to these claims. That's a real, that's a real heroic assertion. Your Honor, I. Right? I mean, you said, oh, they're responsible in damages if they serve pork once. They are, and. And they're entitled to qualified immunity if this, if what you're arguing is not clearly established. Well, and let me back up. I don't believe I've made the assertion that if they committed the conduct one time that they would. Any number of times. Well, any number of times gets us to the point where, in fact, it's no longer isolated. It isn't. It is widespread, and certainly their qualified immunity should not apply at that stage. I'm going to decide that. Well, shouldn't they have the opportunity? If isolated versus widespread is the distinction that's relevant to qualified immunity, that's an issue of law for the court. Respectfully, Your Honor, I would just. I mean, that's not debatable. There may be something for the jury if the plaintiff survives qualified immunity. In that regard, is there a, what equitable relief is sought here? In terms of. Specifically. Specifically. If qualified immunity is clearly foreseeable, what's left of the case? If we accept your appeal on the, what is it, 12B6? Are you asking for what? If damages are not available to your client, what's left of the case? Well, I'm not certain the damages wouldn't necessarily be available to my client. I just told you what my thinking is on that. I accept that qualified immunity looks like a slam dunk with a circuit qualified immunity precedent. If that proves to be true, what's left of the case? Assuming that qualified immunity does apply. I think that was my question. That would be, in fact, fatal to Napoleon's case. We wouldn't concede that qualified immunity applies. Judge, going back to your question as it relates to the isolation or whether it's a substantial burden or not. This court in Hayes v. Long has made it very clear that Muslims and the consumption of pork in any form is not permitted by them. And that they're not allowed to come into contact with them. That it's forbidden. It is that much of a tenant of their religious beliefs. And this court has recognized that. That is, in fact, the adherence to someone's faith. The substantial burden that is being placed on Napoleon effectively is, well, in other words, to eat. You may, in fact, be putting at risk the adherence to your faith. If the respectfully… Counsel, I don't disagree with that in concept. But what's the evidence here that this was a pattern of misconduct rather than just a series of potentially negligent actions? A series of negligent actions such as this can, in fact, be a pattern of misconduct, Your Honor. We have a situation where we have it happening time and time again. And perhaps the better question might be, at what point in time do the appellees… Is there a line drawn that they can't just say, oh, I'm sorry, we made a mistake. We'll fix it. But weren't all of Mr. Mboniuk's grievances decisively and promptly addressed? They were, in fact, promptly addressed, Your Honor, yes. Well, and there's a lingering issue that the parties don't brief. But I could not find a single free exercise case, particularly in prison, that said that negligence was enough. Not one. And, I don't know, have you been able to find one? Not that says negligence in and of itself is enough. What I would be standing for, Your Honor, is that you can't always use the negligence defense over and over and over again. Is there a duty and responsibility that is placed on the appellees for ensuring individuals to be able to exercise their faith? And what I mean by that is making sure that the food that is being served does not, in fact, have those contaminants in it. I see that my time is up, and perhaps I'll get rebuttal. Thank you. Thank you. Mr. Hill? May it please the Court? William Hill for the Iowa prison officials in this case. This case presents the question of whether the religious rights of an Iowa offender were substantially burdened when he was served items that were not in conformity with his religious beliefs. The Iowa prison officials assert that his rights were not substantially burdened, that the summary judgment was properly granted, and that the decision of the district court should be affirmed on appeal. At issue in this case, and truly the starting and the ending point, is the question of substantial burden. This is a First Amendment-only case. We are not looking at sincerity. That issue was not objected to by the parties on the summary judgment record. As well, there were some preliminary issues with regards to exhaustion of grievances or responding at superior, which were not followed through with on appeal by the prison officials. The question of substantial burden and of what constitutes that burden, we would assert, is a legal issue. And it's a difficult line to sometimes draw between where it becomes a legal question and where it might be a factual question. Excuse me? Federal appellate support for that, that it's a question of law. Well, I think the question, and I was trying to... Support that addressed the issue. In Patel, they defined what a substantial burden is, and I think the best way to maybe kind of parse that road is, they just didn't say burden. The court indicated substantial burden. And I think a burden on an individual's right to practice their religious rights would be if there was no deference provided to their religious requests at all. For example, if the Iowa prison officials just said, hey, you get what you get. In this case, there was some planning and some preparation. Iowa has a system whereby they provide inmates a pork-free diet, and when there is pork, there's notice in advance. And so I think this is the type of case where it's not just he was out there on his own. There was efforts made not to burden him, to borrow that phrase. And so I think when looking at the burden versus the substantial burden, I think the true burden would be, or substantial burden would be if nothing were done at all. In this case, steps were taken to satisfy the religious concerns of the offender in this case. What about the opposing counsel's whack-a-mole argument, which is, oh, yeah, we fix that one, but then another one pops up. Fix that one, another one pops up. I understand. And at some point, I guess, could it cross the line where if the guy's meal was screwed up three times a day for six months, yeah, it might cross that line. Here we have the four instances over the period of six months or so. And I think what's probably most telling is the response of the prison officials. And specifically, when they were raised, there were the four incidents. Two of them were what I would call were ingredient-based challenges. That is, where the food that was served was not, you know, there wasn't necessarily a clue that it contained pork. It wasn't ham and bean, pork rinds, or that. It was a toaster pastry in a shredded wheat. There wasn't a real sense. It wasn't real intuitive to the prison officials that these items would contain pork. So they took steps to ensure that, hey, we aren't serving pork. What about the pork and beans or the ham and beans? I can't remember which one it was. There were two different incidences. And in one, I think the evidence showed that it was, in fact, on the menu and placed on the menu and notified. I don't know why he got the tray or didn't get the message that, hey, this is a pork product. On the other incident, it seemed like he didn't, and the factual record is a little hazy, but on one of them, I don't think he ate it because he suspected it. And so that course of conduct over a period of six months or whatever period of time it is, isn't the substantial burden to a religion that one envisions under the law. In this case, the important part was efforts were made to comply with his diet. When they didn't have compliance, they took steps to remedy it. They didn't order that certain brand of toaster pastry anymore or didn't serve him the shredded wheat. And then we're left with the two isolated incidents where, hey, something did go awry. Why not raise—I didn't see this, and maybe—why not raise, if we're at the summary judgment phase, why not raise qualified immunity? Because you'd have a really good argument that it's not clearly established that negligence is enough. We could have been. It could have been, and I think that would have been a valid defense. And I think—and that's always the question that when those at our shoes raise the brief, when is enough enough? And, you know, how many grounds do you raise because we raised responding to superior grievances? We could have thrown in qualified immunity. But I think at some point qualified immunity says, hey, the law's not well established and we didn't know. I think we know in this case and we're trying to do the right thing. And so I think maybe that's the reason or the rationale why we're more concerned with doing the right thing than just saying, no, we don't have to pay. And the fact that you know the right thing is evidenced by the rather extensive policy in Iowa prison systems. Isn't that right? Correct. Correct. We do the non-PORC. And, you know, reading the Patel case, Iowa's system is somewhat similar to the Patel, the two lines. And we have those same issues. And dietary things, dietary issues in prison is difficult on an easy day. I mean, there's a lot going on. A lot of different requests for different types of food from specialty foods and serving a large number of population a large number of meals is difficult. But here there's no evidence of anything but negligence that I can see. No, no. And I think that's what I would say happens when we looked at what we do in response to the grievances. And that's why I'm particularly, you know, the evidence is good. We did something about it. We said, gee, what did we do wrong as opposed to, you know, too bad. We called the manufacturer, the toaster pastry, and they said, well, we're 95% sure it was beef gelatin, not pork gelatin, but we don't know. And we said that's not good enough. And so we took steps to alleviate those concerns. And so I don't think there's a number of bad acts that kind of crosses the line. I don't think it's a numerical issue. And I don't think it's a per se, we served him a nonconforming item, it's a constitutional violation. I think it's just a question of law as the court determines in a variety of contexts, was it a substantial burden, you know, for example, was it a de minimis use of force, was it an atypical or significant deprivation. These are all the types of legal questions the court has to make. Does the conduct at issue cross the constitutional line? And the evidence presented by the prison officials in this case established that the conduct did not cross that constitutional violation line. So unless there are any further questions, I'd waive our remaining time and request that this court affirm the decision of the district court. Thank you. Did Mr. Cragness have some time? I'll give you a minute. I think we understand the case, but you may think we don't. I would shudder to say that, Your Honor. Your Honor, just briefly, and I appreciate the court's indulgence in giving me a little bit of time. I certainly respect the court's comments related to negligence. I want to reiterate, though, we do get to a point where, oops, I did it again, can't be allowed. That's effectively what has occurred in this case. If we just continue to make the same mistakes, even if it's a different type of food, we're making the same mistakes over and over and over again, which then results in the deprivation of my client's right to adhere to his religious faith and, in fact, one of the most important parts of his religious faith, and that's making sure that he's not handling or ingesting pork in any way, shape, or form. We live in a technology and information era. The information is not hard to derive. It's not hard to find. The substantial burden being placed on Napoleon is that he is being served food that he has requested that he not take. Your Honors, I see my time is up. I appreciate the court's indulgence. Thank you. Thank you, Counsel. The case has been well briefed and argued, and we will take it under advisement.